## Lewis v. Dalton.

(Decided September 18, 1920.)

### Appeal from Warren Circuit Court.

Fraud—Fraud and Misrepresentation.—Plaintiff held not entitled to recover money paid through alleged fraud and misrepresenta-

tion where, with knowledge of same, he agreed upon a given con-
sideration for the purchase of stock in a corporation indemnifying
defendant against any loss he might sustain by reason of said
transaction and suffered judgment in two suits on notes arising
out of the same matter to go by default.

GEO. H. GALLOWAY and W. O. RODES for appellant.

MAX B. HARLIN for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Appellant, a stockholder in the Southern Traction
Company, was desirous of acquiring a controlling inter-
est in the company. Under an agreement with appellee,
one Morris was employed to purchase from Hanes and
Davis the stock and bonds held by them in the company,
Morris to be paid one hundred dollars for his services.
Appellant agreed to pay appellee for his holdings in the
company the same price paid for the Hanes or Davis in-
terests.

After the sales had been negotiated appellant insti-
tuted this action to recover the sum of $1,375.00, which
he alleged he had paid through the fraud of appellee, in
excess of the amount actually paid for the stock and
bonds aforesaid; it being claimed appellee made false
statements as to the amount paid Hanes and Davis for
their shares.

For the Hanes stock (ten shares) appellant paid
$600.00, though Morris purchased it for a consideration
equivalent to $175.00 less than said sum. He was charged
$2,500.00 for the Davis holdings (ten shares of stock and
four $500.00 bonds), whereas Morris only paid $1,900.00
for same; a like consideration was agreed upon for ap-
pellee's stock and bonds. It is not alleged when appellant
discovered the acts complained of in his petition.

The first paragraph of the answer was a denial of the
allegations of the petition; in subsequent paragraphs it
is affirmatively pleaded that appellant agreed to pay the
prices charged him for the stock and bonds purchased;
that appellant paid for same in cash and notes long after
he knew the price that had been paid therefor, and he
suffered two suits instituted by appellee on the notes
aforesaid to go by default. The defense was rested on
the pleas of estoppel and *res adjudicata.* An answer filed
by appellant in the second of the two suits on said notes,
in which substantially the same facts were alleged as in
the present petition, was later withdrawn from the record
in that case.

On the issues made by the pleadings a trial was had; appellant testified in his own behalf, introduced H. L. Davis and then rested, whereupon appellee's motion for a directed verdict was sustained and this appeal followed.

Davis testified he sold his stock and bonds for $1,900.00. Appellant told of the organization of the traction company and that being dissatisfied with the management he was anxious to secure a controlling interest therein. This he succeeded in doing after the acquisition of the Hanes, Davis and Dalton stock, and he was elected president and business manager of the company. He testified to the difference between the actual cost of the Hanes and Davis shares and that represented to him as being the price paid for same. His testimony leaves no room to doubt the correctness of the ruling of the circuit court in sustaining appellee's motion for a directed verdict.

$600.00 in cash was paid for the Hanes stock. Payments for the Davis holdings were made as follows: July 17, 1915, $1,000.00; July 19, $400.00, and July 23, $1,000.00, leaving $100.00, balance to be paid later. Appellant thus details what took place at the Citizens National Bank when the payment was made July 23, 1915:

" . . . he (Morris) stepped up to the office window in the bank on this side and asked Mr. Beard for that $2,500.00 option, and Mr. Beard says you mean the $1,900.00 option, and Mr. Morris motioned him back to the next window away from me and said something to him that I did not understand. That was the first intimation that I had that there was any fraud being practiced."

Though satisfied this reference was to the option on the traction stock appellant made no inquiry of Beard about the same, but he says the thing that got on his mind was to see Davis, and this he did within about one hour thereafter, and Davis then told him he let Morris have the stock for $1,900.00. But this was not all; on August 7, 1915, appellant purchased appellee's stock and bonds for the same amount paid for those of Davis; to use his own language:

" . . . finally I agreed to take his stock anyhow, under all the conditions at $2,500.00."

As a part of the consideration for this purchase appellant on August 7, 1915, executed his note to appellee for $2,000.00, pledging as collateral several of the traction company bonds, at the same time by separate writing

indemnifying appellee against any loss he might sustain on account of any obligation incurred in behalf of the company.

These admissions render unnecessary any discussion of the pleadings in the two suits on the notes growing out of the purchases aforesaid, and in which judgments went by default.

Finding no errors in the judgment appealed from same is accordingly affirmed.